Filed 11/9/15  P. v. Johnson CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WILLIE EDDIE JOHNSON JR., <br><br> Defendant and Respondent. | B259279 <br><br> (Los Angeles County <br> Super. Ct. No. KA105512) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas Sortino, Judge.  Affirmed.

Jackie Lacey, District Attorney, Roberta Schwartz and Felicia N. Shu, Deputy District Attorneys, for Plaintiff and Appellant.

Ronald L. Brown, Public Defender, Albert J. Menaster, Veronica Verdugo and Nicole M. Campbell, Deputy Public Defenders, for Defendant and Respondent.

_____

# INTRODUCTION

A jury convicted Willie Eddie Johnson Jr. of assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)), a felony, and found true the special allegation that he had inflicted great bodily injury on a victim 70 years or older (§ 12022.7, subd. (c)). The trial court granted Johnson's motion at sentencing to reduce the felony conviction to a misdemeanor. The People argue the trial court abused its discretion. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.    *The Crime*

Fouad Mokdad solicited a prostitute, Ziporiah Jenkins, to perform oral sex in his car. After Jenkins had performed this service, Mokdad refused to pay her the $20 he had agreed to pay. Mokdad then drove to a convenience store parking lot and parked in a space facing away from the store and next to another car on the driver's side. Jenkins demanded her money, and the two of them argued in the front seat of the car. Jenkins stated in her preliminary hearing testimony, which the prosecution read at trial, that Mokdad "was being aggressive" and flailing his arms at her, raised his right fist in a "fighting boxing type of stance," and said, "I ain't giving you anything, bitch." When Jenkins continued to insist that Mokdad pay her, Mokdad cursed at Jenkins, shook his fists, and shouted at Jenkins to get out of the car.

Johnson had been shopping in the convenience store and was carrying his purchases in a plastic bag out to the parking lot. The video recordings show that after Johnson left the store he turned to his right to leave the parking lot but then changed directions and walked towards the car occupied by Mokdad and Jenkins. Johnson

---

[1]     Statutory references are to the Penal Code.

2

testified that shortly after leaving the store he heard people yelling and cursing from inside the parked car and realized that his long-time friend Jenkins was sitting in the front seat, arguing with the male driver. He decided to ask Jenkins why she was upset.

As Johnson approached the car, it began backing up and almost hit him before it abruptly stopped. Jenkins testified that Mokdad was trying to drive away with her still in the car. Johnson immediately opened the driver's door and leaned into the car to speak to Jenkins. Jenkins told Johnson that Mokdad, the driver, was refusing to pay her as he had promised. Johnson directed Mokdad to pull back into the parking space. Johnson opened the rear passenger door on the driver's side and got into the back seat. Mokdad closed the driver's door and re-parked the car. Johnson testified that after he got into the backseat Mokdad and Jenkins continued to curse and yell at each other. Johnson listened to them argue for a few seconds and then decided to leave.

The video recording showed the rear passenger door on the driver's side swinging open. Seconds later, Johnson emerged from the car, holding the plastic bag in his left hand, and Mokdad quickly jumped out of the car from the driver's side door. The two men closed the car doors and faced each other on the driver's side of the car, with Johnson's back to the convenience store and the video camera. Only Mokdad's head and a partial view of the front of his upper body were visible to the camera.

Both men were talking and moving around in the confined space. Johnson was still holding the bag in left hand, and his right arm was slightly bent. Both of Mokdad's arms were bent near his waist as he took a step forward and to the right of Johnson. Johnson then stepped to his left and in front of Mokdad, who then stepped back. Suddenly, Johnson moved his right arm back at a slight angle and swung it forward, striking Mokdad on the side of the head, although it is unclear from the recording whether Johnson used his fist or open hand. Mokdad dropped to the pavement on his back, and Johnson left the parking lot. Jenkins got out of the car and followed Johnson. Seconds later, she returned, looked around, rifled through Mokdad's clothing, retrieved something, and walked away.

Johnson testified he did not punch Mokdad but instead hit him with an open hand after Mokdad continued to curse and argue with Johnson while refusing to return to the car. According to Johnson, who said he just wanted to get away, Mokdad stood "face to face" with Johnson, yelled some "fighting words," assumed a fighting stance, clenched his fists, and nudged Johnson in the chest with his left forearm. Jenkins testified that Mokdad was "talking crazy" as they faced each other. Johnson considered Mokdad's actions threatening, and he reacted quickly by delivering a single hard slap to Mokdad's head. Johnson denied he was upset that Jenkins was with another man or that Mokdad did not intend pay her. In a police interview, Johnson was still angry, but expressed remorse for having struck Mokdad and later wrote him a letter of apology.

Mokdad was taken to the hospital. The blow to Mokdad's head resulted in a subdural hematoma, bleeding in and around the brain. The emergency physician gave Mokdad platelets, and the hospital kept him under observation for several days. When his son visited him on the day of the assault, Mokdad could not recall what had happened to him and was speaking unintelligibly. Mokdad was not able to recognize his family members for four or five days. Mokdad did not appear at the preliminary hearing and was out of the country at the time of trial.

B. *The Verdict*

The jury convicted Johnson of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)),[2] a "wobbler."[3] The jury also found true the special

---

[2] Section 245, subdivision (a)(4), provides: "Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both fine and imprisonment."

[3] "'Wobbler' is the jargon term in criminal law for an offense that can be punished either as a felony or a misdemeanor." (*People v. Eandi* (2015) 239 Cal.App.4th 801, 804, fn. 3.)

allegation that Johnson had inflicted great bodily injury on a victim who was 70 years or older (§ 12022.7, subd. (c)).[4]

C. *Sentencing*

According to the probation officer's report, Johnson was 51 years old at the time of the offense and lived as a transient. He had a lengthy criminal history consisting of misdemeanor convictions for giving false information to a police officer in February 1983, being under the influence of a controlled substance in July 1983, being under the influence of a controlled substance in 1984, trespassing in March 1986, spousal abuse in March 1987, battery and resisting, delaying and obstructing an officer in the performance of official duties in September 1987, being under the influence of a controlled substance and possession of drug paraphernalia in 1990, spousal abuse in 1991, battery in January 1992, aggravated assault in 1996, disturbing the peace in 2010, and possession of a controlled substance in 2007. Johnson had felony convictions for possession of a deadly weapon in February 1986, taking or driving a vehicle without the owner's consent, receiving stolen property, and grand theft of an automobile in March 1988, possession of a controlled substance in May 1992, residential burglary in 1993, and possession of a controlled substance in 2011. Johnson had violated the terms of his probation and parole on numerous occasions. The probation officer reported that Johnson was ineligible for probation and recommended that the trial court sentence Johnson to the upper term for aggravated assault.

---

[4]     The trial court had granted Johnson's motion to bifurcate trial on the special allegations that he had suffered one prior serious or violent felony conviction (§§ 667, subds. (a)(1), (b)-(i), 1170.12) and had served several separate prison terms for felonies (§ 667.5, subd. (b)). Because the trial court reduced the felony conviction for aggravated assault to a misdemeanor, however, there was no trial on the prior conviction allegations.

Johnson filed a motion pursuant to section 17, subdivision (b), to reduce his felony conviction for aggravated assault to a misdemeanor.[5] In their written opposition, the People argued that the court should deny Johnson's motion in light of the nature and length of Johnson's criminal history, his irrational and violent response to the elderly Mokdad, and the severity of Mokdad's injuries. The People asked the court to sentence Johnson to 16 years in state prison.

At the sentencing hearing, the trial court explained in detail its tentative decision to grant Johnson's motion. The court began by assessing Johnson's criminal record, which, although the court acknowledged was "terrible" and "lengthy," was nonetheless devoid of "felony violence." Most of Johnson's felony and misdemeanor convictions were for drug offenses. Johnson's 1993 conviction for residential burglary, which the court characterized as "carrying with it the possibility of violence," was "now 21 years old." The court also noted that Johnson's misdemeanor convictions for crimes of violence occurred in the 1980's and 1990's.

After reviewing Johnson's criminal history, the trial court acknowledged that it could strike the great bodily injury enhancement and Johnson's prior strike and impose a seven-year state prison term.[6] The court rejected this sentencing option, however, because the court concluded that, "given the circumstances of this offense," a seven-year sentence was not warranted. The court also stated that, although Mokdad did not deserve

---

[5] Section 17, subdivision (b)(1), provides: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail . . . it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170."

[6] The trial court apparently arrived at this possible sentence by selecting the lower term of two years under section 245, subdivision (a)(4), plus either the five-year enhancement for inflicting great bodily injury on an elderly victim under section 12022.7, subdivision (c), or five one-year enhancements for Johnson having served five separate prison terms for felony convictions within the meaning of section 667.5, subdivision (b).

6

to be the victim of an assault or his severe injuries, Mokdad had "created the situation that resulted in this criminal act" by soliciting a prostitute, refusing to pay her, and beginning to drive away while she was still in his car. The court noted that Mokdad's actions amounted to criminal acts of solicitation, false imprisonment or attempted kidnapping, for which he could have been prosecuted. The court explained that, because Mokdad had declined to testify in court, there was no other reasonable inference from the evidence.

Turning to the circumstances of the crime, the trial court observed that the confrontation between Mokdad and Johnson began as an argument and ended with Johnson delivering a single blow to the side of Mokdad's head and leaving the parking lot. The court stressed that Johnson refrained from hitting or kicking Mokdad after he had fallen to the ground. Nor, the court noted, did Johnson make any attempt to search Mokdad's clothing for money or other personal property. The court stated, "He literally hit him once and walked away." The court stated it had considered Mokdad's advanced age as a factor, but noted Johnson was 51 years old and, although not elderly, he was also not a teenager preying on a victim whose age made him vulnerable. As for Mokdad's injuries, the court acknowledged Johnson "gave a good swing," which the court expected to have caused some bruising to the side of Mokdad's head, consistent with harm from a punch. Instead, the medical photographs revealed a red mark on Mokdad's head, which indicated he had been slapped rather than punched.

Following the argument of counsel, the trial court summarized the factors it had discussed and, after commenting it was "a tough call," adopted its tentative ruling and granted Johnson's request to reduce the felony conviction to a misdemeanor. The court commented that "if this was any other case" the court would have had no problem sentencing Johnson to "a substantial amount of time in prison," but that "the facts and circumstances of this offense" led the court to conclude that "seven years in the state prison is just not a just sentence." The court sentenced Johnson to the statutory maximum of one year in county jail.

7

**DISCUSSION**

A. *Section 17 and the Standard of Review*

"The Legislature has classified most crimes as *either* a felony or a misdemeanor, by explicitly labeling the crime as such, or by the punishment prescribed. . . . There is, however, a special class of crimes involving conduct that varies widely in its level of seriousness. Such crimes, commonly referred to as 'wobbler[s]' [citation], are chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor." (*People v. Park* (2013) 56 Cal.4th 782, 789 (*Park*).) Section 17, subdivision (b), gives the court discretion to punish a defendant convicted of a wobbler offense as a misdemeanor, even if the People charged the defendant with the wobbler as a felony. (See *Park,* at p. 790; *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 974, disapproved on other grounds in *People v. Williams* (2005) 35 Cal.4th 817, 832.) Section 17 "'"'specifically leaves the determination of the nature of the conviction to the discretion of the judge,'"'" and "[t]he court's authority to exercise discretion in this regard is a long-established component of California's criminal law." (*Park*, at pp. 790, 800; see *id.* at p. 801 ["the Legislature has empowered the courts to decide, in each individual case, whether the crime should be classified as a felony or a misdemeanor"].) Moreover, the fact that a defendant like Johnson is subject to an enhancement for personal infliction of great bodily injury does not deprive a court of discretion under section 17, subdivision (b), to declare the offense a misdemeanor. (*People v. Feyrer* (2010) 48 Cal.4th 426, 444 & fn. 11.)

A trial court properly exercises its discretion to reduce a wobbler to a misdemeanor when it has concluded that a particular defendant should not be treated as a felon. (*Park, supra*, 56 Cal.4th at p. 801.) "Such a defendant is not blameless," but is someone for whom "felony punishment, and its consequences, are not appropriate" and who is not "a member of the class of criminals convicted of a prior serious felony whom the voters intended to subject to increased punishment for a subsequent offense." (*Id.* at pp. 801-802; see *id.* at p. 790 ["the court's exercise of discretion under section 17(b)

8

contemplates the imposition of misdemeanor punishment for a wobbler 'in those cases in which the rehabilitation of the convicted defendant either does not require, or would be adversely affected by, incarceration in a state prison as a felon'"].)  In exercising its discretion, the court should consider factors relevant to similar sentencing decisions, including "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense or his [or her] traits of character as evidenced by his [or her] behavior and demeanor at the trial.'  [Citations.]  When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule 410 [now rule 4.410]."[7]  (*Alvarez*, *supra*, 14 Cal.4th at p. 978.)

We review the trial court's "broad latitude" in exercising its authority to grant or deny a defendant's request to reduce a wobbler from a felony to a misdemeanor under an "extremely deferential and restrained" abuse of discretion standard.  (*Alvarez, supra*, at p. 981; see *People v. Sy* (2014) 223 Cal.App.4th 44, 66 ["[a] court ha[s] broad discretion under section 17, subdivision (b) in deciding whether to reduce a wobbler offense to a misdemeanor"].)  "'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'"  (*Alvarez, supra*, at pp. 977-978.)

---

[7]      Rule 4.410 of the California Rules of Court provides:  "(a) General objectives of sentencing include:  [¶]  (1) Protecting society;  [¶]  (2) Punishing the defendant;  [¶]  (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses;  [¶]  (4) Deterring others from criminal conduct by demonstrating its consequences;  [¶]  (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration;  [¶]  (6) Securing restitution for the victims of crime; and  [¶]  (7) Achieving uniformity in sentencing.  [¶]  (b) Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge must consider which objectives are of primary importance in the particular case.  The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case."

### B. *The Trial Court Did Not Abuse Its Discretion in Granting Johnson's Request To Declare His Current Offense a Misdemeanor*

The People argue that the trial court abused its discretion because "the court's prejudice and bias against Mokdad caused it to look outside the perimeters of an individualized consideration of the offense, the offender, and public interest . . . ." The People assert that the trial court erroneously believed "Mokdad was the cause of the assault," "blamed the victim," and "minimized Johnson's conduct" by stating he hit Mokdad with "a slap and not a punch."

The trial court's decision to punish Johnson's aggravated assault conviction as a misdemeanor fell within the court's broad discretion under section 17, subdivision (b). The trial court properly considered the appropriate factors, including the nature and circumstances of the offense, in deciding to treat Johnson's offense as a misdemeanor rather than a felony. Mokdad, who only encountered Johnson because he had refused to honor a debt he had incurred in the commission of a crime, actively participated in escalating the confrontation from a verbal to a physical altercation. Johnson reacted impulsively in response to a perceived threat by striking Mokdad once after Mokdad had nudged him. The assault was not a premeditated or prolonged attack, and Johnson did not use any weapons. Johnson was remorseful for his actions and never denied his involvement. And, although Johnson had a lengthy criminal history, most of his offenses were non-violent and drug-related, and his prior strike conviction and misdemeanor crimes involving violence were decades old.

Although the jury found true the elderly victim sentencing enhancement (§ 12022.7, subd. (c)), there was no evidence that Johnson targeted the 73-year-old Mokdad because of his age. Johnson, who was 51 years old, testified that Mokdad did not appear elderly, and nothing in Mokdad's movements in the video recording suggested he was frail or vulnerable at the time. To the contrary, Mokdad, who was taller than Johnson, emerged from the car as quickly as Johnson did and stood his ground in a fighting stance prior to the assault.

10

The record does not support the People's assertion that the trial court was biased against Mokdad because the court observed that Mokdad had refused to appear in court to testify and that Mokdad's unlawful conduct set in motion the events that culminated in the assault. The court's reference to Mokdad's failure to appear was not a reflection of bias or prejudice. Rather, the court was explaining why it believed Jenkins' preliminary hearing testimony: Without any testimony from Mokdad, Jenkins' version of events leading up to the assault was credible and uncontradicted. None of the three participants was entirely blameless, and they all engaged in conduct that played a role in the events that led to the assault. Jenkins was working as a prostitute. Mokdad solicited prostitution and refused to pay. Johnson assaulted Mokdad. Whether or not the court mischaracterized some of Mokdad's actions towards Jenkins as false imprisonment or kidnapping, as the People assert, the evidence supports the court's finding that Mokdad's persistent refusal to pay Jenkins, his attempt to drive away with her in the car, and his decision to get out of the car when Johnson did contributed to the confrontation between the two men. As the court noted, "[w]hatever happened inside the car, Mr. Johnson got out of the car first. At that point, if Mr. Mokdad wanted to end it, all he had to do was lock the doors and drive away."

Finally, as the People acknowledge, the court stated it was not blaming the victim. The court stated that, although Mokdad "created the situation which ultimately resulted in his injury, that doesn't mean he deserved what he got. . . . He did not. But he set in motion a chain of circumstances that ultimately produced the criminal act by Mr. Johnson. And again, it's Mr. Johnson's total responsibility for what he did. I'm not [putting] blame on the victim. I'm [pointing] out the fact that he created the facts that led to this crime." The trial court appropriately considered the "situation" and "circumstances" of the crime in exercising its discretion under section 17, subdivision (b). (See *Alvarez*, *supra*, 14 Cal.4th at p. 978.)

11

**DISPOSITION**

The judgment is affirmed.


SEGAL, J.

We concur:


PERLUSS, P. J.


ZELON, J.